Aguilar-Padilla v. Boydstun Equipment, LLC 244536-25276 Yes, we're ready for your argument. May it please the Court, I'm Tom Christ. I represent the defendant in this employment case, and I'd like to reserve five minutes for rebuttal, please. Sure. This case led to two appeals, one from a judgment on the merits and then one from the follow-on judgment for attorney fees, and I'd like to start with the appeal on the merits. The main issue is whether the case went to trial on a non-viable claim. The second claim, which the parties call the retaliation claim, is based on a statute that creates a right of action based on the violation of other statutes. But this claim was not pled that way. It was pled instead as a claim for a violation of a temporary administrative rule. The COVID rule. The COVID rule. That's how we're referring to it in the briefing, colloquially, so I just want to make sure we're talking about the same administrative rule. That's the rule. Okay. We'll call it the COVID rule from now on. Oh, that's okay. And our point is simply that the other statutes are actionable, but the rule is not. And when that was pointed out to the district court on multiple occasions, the retaliation claim should have been dismissed, but it wasn't. Instead, it went on to trial. And as you'll later hear, it took up the bulk of the litigation in this case. Now, so the main issue here is, is that administrative rule, a violation of it, actionable? If you've handled cases involving Oregon law, you know that we are pretty strict textualists here. We construe laws according to the text, and if the text is unambiguous, nothing else. We don't look beyond the text to larger statements of purpose. We don't look behind the text to legislative history. We just look at the words used. The presumption is that the words mean what they say, and to figure out what the legislature meant, we just look at what they said, and only what they said. And what the legislature said here is that an employee can bring an action for a violation of these certain laws. It didn't say that you can bring an action for a violation of an administrative rule, including this one. Well, your opposing counsel argues, as you know, so I'm really anxious to hear your response to this, that the two statutory provisions were directly implicated, because OSHA's, Oregon's OSHA, the anti-retaliation provision incorporates the specific range of statutes, as you know, 654001 through .295, or that is the range that we're looking at, and then they call our attention to 010 and 022, and say those were specifically violated. The first being the general duty of employers to furnish a safe and healthful place of employment, and the second being the employer's obligation to comply with every requirement of OSHA, including rules pertaining to occupational health or safety. What is Boyston's response to that, please? That's not what the statute that they brought this action under says. It doesn't refer to rules promulgated pursuant to the other statutes listed here. The range of statutes listed there include procedural rights and some substantive rights, but they don't include the specific right that was the basis of this claim, which was the failure to rehire the plaintiff after he left to quarantine, and then didn't. The statute that gives the right of action, and this is 654062, subsection 5, doesn't talk about rules promulgated under authority of any other statute. Other statutes do. When the legislature wants to talk about a particular law or rules promulgated under particular laws, it says so. So if you look at 654285, it says exactly that. It refers to every regulation, rule, standard, finding, decision, and order, those are all rules under the heading administrative rule, made and entered under the provisions of these very same statutes. If you look to the next statute down, 654290, it talks about promulgation by the Department of Consumer and Business Services of regulation rules and standards authorized by these same statutes. If it wanted to talk about not just the rights under those statutes, but the rights under rules promulgated pursuant to some of them, it would have used the same language here. Well, it could have. It could have. I'm just trying to figure out why this language is inadequate. It's a rule promulgated during a pandemic, right? And it piggybacks, that's my word, but onto this existing statutory scheme for OSHA violations. Well, it just — there are a multitude of regulations and rules. They're not referenced in the statute that creates the right of action. And if the legislature wanted to — What was the statute that you say created the right to action on which they sued? I didn't get your number. Okay. If you look at 654062 — Sub 5, right? Sub 5. Actually, you start with — it's a word a little funny. If you start at subsection 6, it says that any employee who's aggrieved by a violation of subsection 5 has a right of action, a civil right of action. So a violation of subsection 5 gives you the civil action. But what it talks about in subsection 5 is discharging or discriminating against an employee because the employee has exercised some right as opposed to practice forbidden by certain statutes. It doesn't say certain statutes and regulations thereunder. And if it wanted to say that, it would have said exactly that. And, in fact, it did say exactly that in sections 1 and 2. It talks about any violation of law, statute, regulation, or standard. So the legislature had two ways textually that it could have said what plaintiff is asking you to construe this to say. It could have added the language from subsection 1 and 2, a specific reference to laws or rules. Or it could have done what 654, 285, and 290 do, which is expressly referred to rules promulgated under those statutes. It didn't do that. And our position is that the legislature was — it meant what it said. You can bring an action if the employer violates these particular statutes, but not if, as alleged here, you violate some administrative rule, temporary or permanent. And so the retaliation claim wasn't viable, and it should not have gone to trial. Even if it did, even if it was viable, the child court gave improper instructions on it. And I'm referring in particular to instruction number 14, where the court is trying to explain the administrative rule, and it says that it gives an employee a right to return after quarantining. Or, excuse me, it gives the employer a right to leave to quarantine, which is not exactly what the rule says. It gives you a right to return, a right that plaintiff never exercised. He never asked to return. We got fired in the meantime, right? Yes. But not in a — well, but the right is to return, so he could come back and say, I know you said you fired me, but I have a right to come back and return. But this part of the briefing is a little bit unclear to me. Is it your contention that even though he got fired, that because he didn't come back and say, I want to come to work, that he — this doesn't apply? This instruction was wrong? That's one reason it's wrong. It's wrong for several reasons. He didn't ask to come back, so he didn't exercise the right that was given. The second — Even though he's been fired. I just want to be clear, Boydson's position is that even though he'd been fired, he has to exercise the right, which you construe to be just the right to return. It's a right to return, so you need to exercise that right by asking to return, which he didn't do. OK, I'm going to take that as a yes, and then I'll get out of your way. Go ahead. OK. The right to return is conditioned upon quarantining, which he did not do. You have a right to return when you leave to quarantine and quarantine. He didn't do that. So if he'd asked for the right, he would not have been entitled to it. The third problem with this instruction is the third paragraph down. It says, and it seems to me that the judge came up with this out of the blue, the plaintiff had a duty to quarantine only if the employer informed him of his duty. That's not in the rule. And under the circumstances of this case, that never came up, because the employer didn't tell him to leave and quarantine. He was ordered to quarantine by the health authority. He was ordered, well, they recommended, but OK, he got their request. The judge in the transcript, when you raise this at trial, was quite insistent that he took his instruction straight from the rule, which says the worker must be directed to isolated home and away from other non-quarantined individuals. It doesn't say that employer has to tell him that. It says the worker must be directed. It's passive tense, I guess I would say. And the judge thought that meant that the employer had that obligation. But I'm wondering why this matters so much, because you argued quite, or somebody for Boyston, forgive me, I didn't look to see the name of the lawyer, but quite aggressively, quite forcefully, that in closing, that Mr. Aguilar Padilla had admitted that he knew when he left, that he needed to quarantine. And then when I put that together with the jury's special verdict and with the instructions, it seems clear to me that they decided that he knew he had the obligation, and they must have found that he did quarantine, because they found that he was fired for doing so, or at least that protected right was a substantial factor in the termination. I don't know if you can read that into the verdict, but if you look at the instructions, what it says is it goes on to say, if the employer doesn't tell him, and I don't see the point of the employer telling him to do that when he has been ordered. He got an order from the health authority. He sent the order on to us saying—I sent a letter on to the employer saying— Right. He forwarded the email. And there was a lot of conflicting testimony about what those two men said in that phone call, right? Yeah. Mr. Boyston said, I fired him for this reason. Aguilar Padilla said, no, he asked for my wife's COVID test results, and they disagreed, and the jury heard that, right? The jury heard that. But Mr. Aguilar Padilla testified that he denied Boyston told him, but he testified that he knew he had a duty to quarantine, and you argued that forcefully in closing to the jury. I don't see that that avoids the erroneous instruction, because if you go on after it says he only has to quarantine if the employer tells him to, it says, as a result, your job, as to the first element of this claim, is to decide two issues. One, did the employer explain to plaintiff the scope of his duty to quarantine? If yes, then you must decide, did he? Well, if the jury looked at that and said the employer didn't tell him, he may have found out some other way, but they could say the employer didn't satisfy its duty to explain to him. We don't have to go on and decide whether or not he satisfied his duty to quarantine so that, in fact, if he didn't quarantine and he did not quarantine, that doesn't matter. But, sir, we look at the instructions as a whole and we're looking at the special verdict, right? And the special verdict is as I represented. It's here in the record. The jury decided that they must have found that he quarantined because there's only one protected right that he asserted, which is the right to quarantine and have his job back, and they found that he was fired, that it was a substantial factor that he asserted. Sorry. His assertion of that right was a substantial factor in his termination. So I'm trying to figure out how this is harmful error. If I agree with you that the instruction was infirm, I'm trying to figure out why it was a harmful error. It's not clear whether they, as I read the verdict, I don't think it is clear that they decided that he was fired because he didn't quarantine. He was fired because he left and he didn't have to quarantine. And, in fact, he did not quarantine. There's no question he did not quarantine. Well, that's because you read quarantine to mean staying at home and never going to the grocery store or never doing anything. And the jury heard that conflict, too, and they sure could have decided this case the other way. I'll grant you that. But on appeal, we have certain standards on appeal that we have to apply, and I'm trying to figure out, given the jury's special verdict, maybe we should turn to the jury's special verdict form, and you can tell me if you think I'm misreading it. But I understand that Mr. Aguilar-Padilla only asserted one protected right, and that was this right afforded pursuant to this COVID-19 rule. And the jury found that violation of this protected right was a substantial factor in his adverse employment action, which was termination. So, for me, that's the nub of it. Well, he asserts that his protected right was just the right to leave, which there's a disagreement about that. But backing up to what was before, the instruction itself describes quarantining, isolate at home and away from other non-quarantined individuals. I don't think there's any ambiguity in that, and I don't think there can be any dispute that you are not isolating at home and away from other non-quarantined individuals if you're going to the store regularly. I don't know what the testimony was exactly about going to the store regularly or what the jury found about what was going to... It's clear that there was competing inferences about this and competing testimony, and the jury, as I said, found it one way. I sure think they could have gone the other way. But you seem to be arguing that they had to go the other way, that they had to find... I don't know that I need to go that far. OK. That they did. I mean, what I'm arguing about instructions is did the instructions enable them to find, in his favour, for reasons that are inaccurate under the law, could they find in his favour because he left to quarantine, whether or not he did, and he had that right, which I don't think is true. I mean, our argument, that's not your right. Or they could have said, well, as the court started to instruct, you have a... In order for the plaintiff to have this right, the right to leave, Oregon law imposed on the plaintiff a corresponding duty, the duty to quarantine. Well, even that... But then he immediately turns right around and says, oh, actually, there is no duty unless the employer explains it to him. Well, sir, the rule comes a lot closer on the one way. The COVID-19 rule did say the worker must be directed to isolated home and away from other non-quarantined individuals. Oddly, what it doesn't say is, by the way, a duty is imposed upon the worker to actually quarantine. The court read that in, I think quite reasonably, read in a corresponding duty for the employee. But I want to give you a chance to... What's your best shot at convincing us that the court misread this rule, misdirected the jury about the obligations it imposes? I think the main problem for us is the one that somehow the duty to quarantine disappears depending upon the employer's breach of some duty that it has to explain it to him. I don't think that... It shifts the focus from the employee. Did you quarantine? To the employer, what did you do? That part of your argument I understand, but here's my question. When I look, again, if I agree with you that that was error, if I do, then I'm going to the special verdict form and the other instructions and trying to figure out whether it was harmful, this error that you're arguing. And since he testified that he knew he had the obligation and there was evidence that he quarantined and there's a difference of... a bandwidth about what it means to quarantine, but the jury heard of that. And then I think they certainly found that he quarantined... They must have, because they found that his assertion of that right to quarantine was a substantial factor in his termination, sir. I think what the jury could say is you didn't quarantine and you had a... But you had no right to. I mean, you had no obligation to. Otherwise, how would I... That's the argument that you're making. I'm just trying to reconcile it with the special verdict form finding that I've got where we know they decided that his assertion of a protected right was a substantial factor in the termination. I think he only asserted one protective right here, and that was the right to quarantine. Am I missing that, Tim? What am I missing? You're missing my two main arguments. One, you had no such right, and two, that they did not necessarily find that. But I'm... I think I've heard your arguments. It is my job to push back and try to figure out if this is a harmless error. So I'm going to ask you... At this point, you're over time significantly, but I'm going to hear from opposing counsel, and then we'll give you two more minutes when you come back on the clock. Thank you. Thank you for your patience with my questions. Good morning. Emily Tuplin Fox for the plaintiff. I want to start by clarifying how ORS 654-010 and 022 fit into our claim. It is not an alternative to our assertion that the plaintiff's claim hinges on a rule violation. Rather, our point is that when a defendant violates an OR-OSHA rule, they are violating 654-010 and 654-022. That is what we asserted in our operative complaint. We raised it at oral argument. That's always been one of the legal reasons why a worker who has been fired or otherwise discriminated against for asserting his right under an OR-OSHA rule has a claim under 654-062-5C. The defendant's whole argument is that they don't, we don't have a claim because there hasn't been a violation of a statute explicitly referenced in 55C, but there has been such a violation, and the violations are of 654-010 and 654-022. It's true that the GAINS framework applies to the interpretation of 654-062-5C. And here, looking at the text itself, the Oregon legislature chose very broad language. The statute, 5C, refers to any right afforded by. So a worker who is penalized for exercising any right afforded by the OSEA has stated a claim. Any right afforded by is, as the state of Oregon asserts in its amicus brief, any right that owes its existence to OSEA. That includes rights set forth by OR-OSHA rules. Important context here is also found in Oregon appellate law interpreting 5A and 5B. So those are very, very close statutes to 5C. And in fact, in 1973, when OSEA was enacted, what is now 5A, 5B, and 5C were all folded into one provision. You can see that 1973 articulation on page 10 of OTLA's amicus brief. So that evinces a legislative intent to interpret these three provisions, 5A, B, and C, harmoniously with each other. And Oregon appellate law has been clear for decades. You do not need to articulate a violation of a specific statute to state a claim under 5A and 5B. So the Oregon Supreme Court here would similarly not require a statute, an explicit statutory violation, to state a claim under 5C. But if they did, we have articulated one, and those statutes, again, are 010 and 022. The Butler case is particularly salient in terms of how broadly the Oregon appellate courts have interpreted the rights afforded to workers under 5A and 5B, and a good indication of why the Oregon Supreme Court would adopt plaintiff's interpretation of 5C. The Whirlpool case from the Supreme Court is also very instructive, along with the Kentucky Supreme Court from 2005 called Hargis. Those are also instructive cases that the Oregon Supreme Court would look at in informing its analysis. What about the instructional error argument? Closing counsel argues that the instruction 14 in particular was error because the court informed the jury that the right your client had didn't arise unless Boyston informed him that he had to quarantine. Yes. Thank you, Your Honor. First of all, the court well understands the standard here, which is looking at the jury instructions as a whole, and I do want to point out that the defendant did not argue that the verdict was unsupported by substantial evidence in the record. I appreciate that, but what if I think this is error? What does it say that your client didn't have a duty to quarantine if the employer didn't tell him to quarantine? Well, the court, as you pointed out, made very clear that it was basing instruction 14 on the language of the rule itself. We actually believe this was error, instruction 14. It created too great of a burden on plaintiff, but because the jury found in plaintiff's favor, that was harmless error. But looking at the jury instructions on instruction 14, the very first paragraph, this is 1 ER 27, the very first paragraph of instruction 14 accurately and correctly states the right at issue. The plaintiff had the right to take leave from work and return to his previous job duties after he had a quarantine order. That's how leave statutes work. You don't need to prove what you did during your leave. You're not answering my question. My question has to do with the employer, whether the employer was burdened by this. So I understand your position is that they shouldn't have, your client, apparently your position is really that he didn't have a duty to quarantine. Unfortunately, we're not arguing that today. That's not before us. I just say, it seems to me that the district court very reasonably read into this instruction a corresponding obligation for your client to quarantine. What that means to quarantine is a different question, and the jury heard a lot of competing evidence about what your client did or didn't do. So for me, that would be a much tougher hill for you to climb. But the one I think you have to climb today, if you would, is to grapple with opposing counsel's argument that it was, he argues this gutted his case, because his theory was that the jury might have decided that there was no duty for your client to quarantine if they decided that Boynton didn't inform him of that. Assuming that's true, that was harmless error. The degree to which my client quarantined, what quarantining really meant, whether Boydston told him to do it, all of that was heavily disputed, presented to the jury, and at the end of the day, the defendant was able to turn to the jury and base its entire closing argument on its assertion that he did not quarantine well enough, and that's the reason he was fired. Didn't he also argue in the closing argument that your client had admitted that he knew he had a duty to quarantine? Yes, yes. And the parties argued over whether, in fact, he did. Did quarantine or did, what's the did in your sentence? Did quarantine. Our position has always been that he did. But I appreciate that. And then sort of the other question is, what does it exactly mean to quarantine? But before you get there, do you agree your client testified that he knew he had a duty to quarantine? He did, yes. He also testified that he fulfilled that duty, and the jury heard all of that. They heard the contrary position, and they ruled in our client's favor. Okay. For that reason, there was no error in Instruction 14. I don't know what other part of the case in chief you want to discuss, and I'm happy to hear whatever your arguments are, but I'm interested, too, in the ‑‑ I took up a lot of time with the opposing counsel on the fees petition argument. Yes, I'm happy to discuss the fee component of the case. Well, it's a little tricky, because I think there was an argument that you made pressed that fees might be available under Claim 2, and I understand you're no longer pressing that point. That's correct. We do not assert that Claim 2 is fee‑bearing. Okay. And so there's a $68,000 verdict here. I think about 60 of it was the non‑economic damages, because Claims 1 and 3 yielded just very small amounts. That's correct. Okay. Those two together equal $8,000, I think. Okay, so then we have $60,000 in non‑economic damages, which is the bulk of the award, and fees aren't available under Claim 2, and I think that's uncontested. The problem with this is, I don't think you'd be entitled to fees for an award of non‑economic damages if they could show that that took some effort. In other words, the district court said, we didn't hear very much testimony on damages. I think there was some testimony, a few questions to the defendant and to his spouse about, you know, how did you feel when you lost your job, and it was upsetting, and I'm not trying to make light of this. I think it was very brief, and I don't see in the record the kind of experts we sometimes see on non‑economic damages. I didn't see anything along those lines. It just seems anomalous, because there's no fees for Client 2, and that is where you got the bulk of your award. Okay, Your Honor, the limited testimony on emotional harm damages in this case is a great reason why the court should affirm the entire fee decision, and here's why. The totality of success on Claim 1, which is fee‑bearing, that is a federal statute integrating FLISA remedies, the totality of success on Claim 1 hinged on successfully proving out Claim 2. Retaliation. Retaliation, with or without damages of any kind, and the district court here made a ton of specific factual findings on this exact point, that we would have had, if there had been no Claim 2, we would have had more or less the same trial that we already had to fully prove out Claim 1, that the success of Claim 1 hinged on the success of Claim 2. Those are factual findings that are subject to clear error review on appeal. I also want to point out a couple of Ninth Circuit cases that are very relevant to this court's determination, in particular Webb and Odema. We're very familiar with that authority. Thank you. In this case, opposing counsel cites a concession. That's my word. There was a motion to dismiss, I think, that was aimed at Claim 2. I think it was only aimed at Claim 2, but that, of course, as you say, is the retaliation liability component. Is it fair that all of that should be deemed intertwined or necessary in order to litigate Claim 1? Yes. Yes, it is fair. And that, again, is based on the district court's sound judgment that they were both legally and factually intertwined. Again, we could not have proven out the entirety of our damages on Claim 1, the fee-bearing claim, without a determination of wrongful termination under Claim 2. They were both legally and factually intertwined. But, counsel, at 2 ER 173 and 74, you billed five entries related to non-economic damages totaling $12,211. That doesn't have to do with retaliation. That has to do with economic damages, non-economic damages. Shouldn't that at least be knocked off the bill? Respectfully, Your Honor, no. That is not what the Hensley line of cases says. There does not need to be a specific parsing out of... But sometimes we parse, if we can. And I think the answer would be helpful. I would find it helpful if you could answer Judge Bea's question. If there's a line-item entry that says non-economic damages, why would you be entitled to that? Well, first of all, the non-economic damages for Claim 2. I would put it this way. Just like plaintiffs can recover for a losing motion in the context of a successful claim, and the Supreme Court has made clear that what matters most is the totality of the plaintiff's success, it is not offensive to include some hours spent on issues or things that in and of themselves discreetly were not fee-bearing, because you have to look at the intertwined nature of the fee-bearing and non-fee-bearing. Your argument is you have to prove Claim 2 to prove 1. In other words, you have to show that he was retaliated against. The fact that he's retaliated against is one thing. Whether it grieves him, and whether he has non-economic damages as a result, is something quite different. You've proved that he was retaliated against, but the proof of just how grieved he was and how upset he was has nothing to do with whether he's retaliated against. Your Honor, you're correct. Whenever you have two discreet claims... And that's what this looks like. Yes, there are always going to be some amount of hours that only have to do with the non-fee-bearing claim and really don't have to do. Do you concede that the least $12,000 should be knocked off the bill? No, Your Honor, no. That's not what the case law dictates. That's where I thought you were going. I'm sorry you didn't go that way. Well, Your Honor, I see my time is coming to an end, but... You can answer that. Is there anything further you want to say on this point? Yes. The case law reflects many such cases like this one, including Webb and Odema, where you could find line items that are just very specific to the non-fee-bearing claim. And what the Supreme Court has dictated is that you take a step back, you look at the nature of whether these claims are related, and you take a further step back and look at the success, the totality of the success. I think that's what saves you on the motion to dismiss, but Judge Bay is asking a different point. The way I read the Ninth Circuit case law on these mixed-fee decisions where you have a non-fee-bearing claim and a successful fee-bearing claim, the case law does not require, and in fact it requires the opposite. It directs courts not to parse out line by line every item, just like you don't pull fees for unsuccessful motions or unsuccessful discovery disputes. This is like that. Thank you for your response and for your advocacy. Let's get the clock straightened out so you know how much time you have first. Just one second. Let me begin where this just ended with the fee dispute. Claims raise facts and legal issues. Two claims can have the same fact, okay? So Claim 1 and Claim 2 had one similar fact. Was Plaintiff retaliated against? In other words, was he fired because he left to quarantine or was he fired because he left to quarantine and didn't quarantine? Okay. But the legal issue, is Claim 2 viable, what I spent my opening talking about, has no bearing whatsoever on Claim 1. So the motion to dismiss didn't assume that he was retaliated against. It's a motion to dismiss on the law. It was all about the viability of Claim 2. It has nothing to do with Claim 1. The motion for summary judgment on Claim 2, the law part of it, had nothing to do with Claim 1. The second motion to dismiss on Claim 2 had nothing to do with Claim 1. The motion to certify the Claim 2 issued to the Oregon Supreme Court had nothing to do with Claim 1. And yet, in most of the instructions and the argument in trial, it was all about the viability of Claim 2. It has nothing to do with Claim 1, and yet the trial judge said, everything you did in this case, it all goes into the fees on Claim 1. That can't be right. It should have been apportioned. The legal arguments on Claim 2, which were the bulk of this case, should be excluded from any fee they get. If I can go back to follow up your questions about the verdict form. The first question, do you find the plaintiff exercised a protected right as described in Instruction 14? So what is the right described in Instruction 14? We think it was erroneous in two respects. It says you have a right to leave, instead of a right to return. But on top of that, your right is not dependent on actually quarantining if the employer doesn't explain it to you. That's not in any law. And so the jury could have looked at these facts and said, we don't think he quarantined. That's a factual dispute, but they could find, we don't think he quarantined, but he still had a right to leave and not quarantine if the employer didn't give proper instructions. That's the erroneous instruction that enabled them, perhaps, to say yes to the first question in the verdict form. And if they said that, that's harmful. I think I'm well over. You are, but it was helpful advocacy, and I appreciate it. We always appreciate vigorous advocacy and excellent briefing, and we certainly got that in this case. Thank you. Thank you both. Thank you all. We'll take that matter under advisement, and we'll stand in recess.
judges: BEA, CHRISTEN, DESAI